MOORE, J.
liThe defendant, Deontia J. Monroe, was charged with possession of cocaine in violation of La. R.S. 40:967(C). He pled guilty pursuant to a Crosby plea[1] agreement which included a sentence of three years at hard labor,- suspended, with three years of supervised probation, court costs and a fíne of $1,000. Monroe now appeals the denial of his motion to suppress. For the following reasons, we reverse the judgment denying the motion to suppress and, accordingly, vacate the conviction and sentence.
FACTS
At approximately 4:30 a.m. on December 9, 2012, while patrolling Chicago Street in Delhi, Louisiana, Officer Tim Crum stopped a vehicle for a minor traffic violation. The driver got out of the car and walked around the front of the vehicle, ignoring commands from Officer Crum to approach him. As the driver walked rapidly away from the car, Officer Crum unsuccessfully attempted to use his taser to subdue him, but the driver fled the area. During this time, a back seat passenger also exited the vehicle and fled.
Shining his flashlight into the vehicle, Officer Crum discovered a front seat male passenger who was either passed out or sleeping. He called for assistance without attempting to awaken the passenger. When Deputy Tyler Wade arrived, the two officers awoke the man by banging on the windows. According to Officer Crum, the passenger awoke disoriented and failed to obey commands to raise his hands. He said the man appeared to preach down under the seat and then he grabbed the ignition keys. At that time, Deputy Wade removed him from the vehicle. The officers handcuffed, searched, and placed the defendant in the back of the patrol car under arrest for interfering with an officer by removing the keys from the ignition.[2] The two officers then searched the vehicle and discovered a bag of cocaine under the front passenger seat where the defendant was sitting.
The defendant was subsequently charged by bill of information with possession of cocaine. He filed a motion to suppress the evidence seized, i.e. the bag of cocaine, as a result of the warrantless search. Although both Officer Crum and Deputy Wade were involved in the search and arrest, the sole witness to testify at the evidentiary hearing was Officer Crum.
Officer Crum testified at the hearing that at approximately 4:24 a.m. on the morning of December 9, 2012, he stopped a vehicle after the driver made a left turn without signaling. The driver turned on Chicago Street in Delhi, then into a driveway and parked. As Officer Crum approached the vehicle, the driver got out of the car and walked to the front of the vehicle. Officer Crum recognized the driver as Terrance Williams. He instructed *1014 Williams to approach him, but Williams walked hastily in the other direction. Officer Crum then fired his taser, but apparently only one prong from the taser hit Williams, who fled away. At the same time, Officer Crum heard a noise from the vehicle and turned to see a second man flee from the back seat of the driver’s side of the vehicle.
Officer Crum returned to the vehicle and shined his flashlight inside |3to see if there was anyone inside. He saw the defendant passed out or asleep in the front passenger seat. At that time, he called Richland Parish dispatch for an additional officer. Deputy Tyler Wade was dispatched to the scene.
When Deputy Wade arrived, Officer Crum apprised him of the situation. The two officers then beat on the windows and yelled at Monroe until he awakened. Officer Crum testified that Monroe appeared dazed and began scrambling or “digging” for something on the floorboard under his seat. He testified:
And when Mr. Monroe wakes up, he’s digging towards his — his, the seat down towards his — between his legs. And we draw our weapons and tell him to show — show us your hands.... he’s not listening to us, like he’s in a daze. Then he reaches over and pulls the keys out the ignition and Deputy Wade was able to get him out of the vehicle. And then we patted him, to make sure he don’t have any weapons and look for those keys that he took out of the ignition.
The officers handcuffed Monroe. Officer Crum testified that the keys were not on Monroe’s person. Monroe was then arrested for interference with an officer and was placed in the patrol car.
After placing the defendant in the patrol car, Officer Crum and Deputy Wade searched the vehicle. They discovered a bag of white powder under the front passenger seat where Monroe was sitting and an open container of alcoholic beverage in the cup holder of the console. The officers did not find the car keys in the vehicle, nor on the ground in the surrounding area of the vehicle. The keys were never located.
Officer Crum made several statements at the hearing giving his reasons for searching the vehicle: initially, he said that he “went back to check the car for the keys and for any type of weapons or anything thatjjwould harm me inside the vehicle.” On cross-examination he stated that he decided to search the car to “check the car for the keys and to see why everybody was running out of the vehicle.” He also said that he was “checking for the keys, to make sure anything inside of the vehicle that could harm me or Deputy Wade.” Finally, when questioned by the court, he explained that he was concerned about the keys for evidentiary purposes, that is, to inventory the vehicle, tow the vehicle and to determine who owned the vehicle. When the court noted that there would be no threat of obtaining a weapon by Monroe (who was handcuffed in the back seat of the patrol car) or the two other gentlemen (who had fled), Officer Crum stated that he “went back to check and to see what maybe he would have been reaching for down there in that area or why everybody is running from me.”
Following argument of counsel, the trial court found that exigent circumstances were created by the need of the officers to find the car keys to make sure the vehicle could be moved. It also stated that unusual and suspicious circumstances arose by virtue of the two individuals fleeing the scene. Ultimately, the court concluded that the necessity of finding the car keys authorized the search of the vehicle which led to the discovery of the cocaine under the seat. Additionally, these facts, the court said, distinguished the current cir *1015 cumstances from those in Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 178 L.Ed.2d 485 (2009), noting:
[W]e have two individuals that have fled from the scene prompting suspicious circumstances. Why would two individuals jump out and just run away? There were certain exigent circumstances because the officers wanted , to make sure that the vehicle could be moved to another location to try to find out who owned the vehicle and the circumstances _[¡jSurrounding the reason why these two individuals had fled. And they needed to find the key. The keys needed to be recovered. And I believe that, that would be the distinguishing factor rather, that separates this case from [the] Gant case. We have unusual circumstances and the need to enter the vehicle in order to recover the key. I find that the entry into the vehicle was authorized. It did not violate the constitutional rights of this defendant against unreasonable searches or seizures for the effort to find the key. Not for the effort to find weapons because weapons could not be used against the officers under those circumstances. But the effort to find the key, I think, prompted the effort by the officers to enter the car. And in the process of trying to find the keys they illuminated the drugs in question beneath the seat of where the defendant had been located. So, based upon that limited circumstance or those limiting circumstances, I find that the Motion to Suppress should be denied.
As previously stated, Monroe subsequently entered a Crosby plea and this appeal followed.
DISCUSSION
The right of every person to be secure in his person, house, papers, and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330; State v. O’Neal, 44,067 (La.App. 2 Cir. 4/8/09), 7 So.3d 182, writ denied, 2009-1243 (La.2/12/10), 27 So.3d 841. The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless [ (¡searches under special circumstances. State v. O’Neal, supra.
The state bears the burden of showing that probable cause and exigent circumstances justified a warrantless search and seizure. State v. Hemphill, 41,526 (La.App. 2 Cir. 11/17/06), 942 So.2d 1263, writ denied, 2006-2976 (La.3/9/07), 949 So.2d 441. Great weight is placed upon the trial court’s ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App. 2 Cir. 5/8/96), 674 So.2d 1082. This court reviews the district court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a de novo review to its findings of law. State v. Hemphill, supra; State v. Jones, 36,553 (La.App. 2 Cir. 1/29/03), 840 So.2d 7, writ denied, 2003-0956 (La.10/3/03), 855 So.2d 309. In reviewing the correctness of the trial court’s pretrial ruling on a motion to suppress, the appellate court may review the entire record. State v. Young, 39,546 (La.App. 2 Cir. 3/2/05), 895 So.2d 753.
*1016 When a trial court rules on a defendant’s motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. State v. Angel, 44,924 (La.App. 2 Cir. 1/27/10), 31 So.Bd 547. The appellate court should not overturn a trial court’s ruling unless the trial court’s conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. Id.
Monroe argues that the search of the vehicle without a warrant in this |7case was unconstitutional because it did not fall within an exception to the warrant requirement and violates Arizona v. Gant, supra, as a search incident to an arrest. In Gant, the defendant parked his vehicle in a driveway and exited the vehicle. Police were on the scene, investigating an allegation of narcotics sales from the house. An officer called to Gant to move towards the officer, and Gant complied. The officer moved towards Gant and they met in the middle, approximately 10 to 12 feet from the defendant’s vehicle. The officer arrested Gant for driving under suspension and placed him in handcuffs. After Gant was placed in the back of a patrol car, the police conducted a search of his vehicle and located a gun and a bag of cocaine in the pocket of á jacket on the back seat. Id., 556 U.S. at 336, 129 S.Ct. at 1715. The lower courts determined that the search was unreasonable. The supreme court affirmed, finding that “[pjolice may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest.” “When these justifications are absent, a search of an arrestee’s vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.” Id., 556 U.S. at 351,129 S.Ct. at 1723-24.
In this case, Monroe was handcuffed and seated in the back seat of the patrol car when Officer Crum and Deputy Ward decided to search the vehicle; because there was no threat that Monroe could grab a weapon or evidence, this reason would not justify a warrantless search. Arizona v. Is Gant, supra. Nor was it reasonable to believe the vehicle contained evidence of the offense of the arrest. Officer Crum said that Monroe was under arrest for “interference with an officer.” Because Monroe failed to comply with the officers’ instructions to show his hands by reaching under the seat and/or grabbing the keys from the ignition, there was probable cause to arrest for “resisting an officer,” in violation of La. R.S. 14:108. Since Monroe was being detained for that crime based solely on his behavior, i.e., their observation of his movements in the car contrary to their instructions, it was not necessary to obtain physical evidence of what exactly Monroe was allegedly reaching for under the seat to prove the crime. Similarly, locating the keys in the car would not add any evidence of the offense. Therefore, we find that it was not reasonable to believe that a search of the vehicle would contain evidence of the offense of resisting arrest. Id.
On the other hand, the state argues that the trial court did not deny the motion to suppress on grounds of a search incident to an arrest because the court distin-' guished the instant facts from those in Arizona v. Gant, supra. Instead, it maintains that the court “specifically found that the officer had probable cause to believe that evidence of some criminal activity would be found in the vehicle due to the special circumstances of this case.” It ar *1017 gues that the supreme court recognized in Arizona v. Gant, 556 U.S. at 346-47, 129 S.Ct. at 1721, that “[o]ther established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand,” such as “[i]f there is probable cause |9to believe a vehicle contains evidence of criminal activity,” citing United States v. Ross, 456 U.S. 798, 820-821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The state contends that the special circumstances in this case not only included the need for the key to the vehicle, but, most importantly, the other occupants’ flight and the defendant’s suspicious behavior when he was taken into custody.
There are two requirements that must be satisfied before a warrantless seizure of evidence within a movable vehicle is authorized under this automobile exception: (1) there must be probable cause to believe the vehicle contains contraband or evidence of a crime; and (2) there must be exigent circumstances requiring an immediate warrantless search. State v. Thompson, supra at 336, citing Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Lopez, 00-0562 (La.10/30/00), 772 So.2d 90; State v. Tatum, 466 So.2d 29 (La.1985). Probable cause means “a fair probability that contraband or evidence of a crime will be found.” Id., citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). “It must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act.” Id. In other words, the actions of the law enforcement officers are evaluated under an objective, not subjective, standard of reasonableness.
Under this theory, the state maintains that the trial court found that Officer Crum and Deputy Wade had probable cause to believe that evidence of some criminal activity would be found in the vehicle. Our reading of the | inrecord only weakly supports this contention. The court stated that the flight of the two individuals from the vehicle created “suspicious circumstances,” but it ultimately concluded that it was the “need to find the key” that authorized the warrantless search. There were exigent circumstances, according to the court, arising from the need to move the vehicle. It concluded that contraband was discovered during the officer’s search for the keys.
The state argues that the flight of the driver and passenger from the scene provided probable cause for the officers to believe that a search of the vehicle would yield contraband or evidence of a crime. While flight from the scene created reasonable suspicion, we do not find that such suspicion itself constituted, or, ripened (by the defendant’s actions) into probable cause to believe that contraband or evidence of a crime would be found in the vehicle. For example, in State v. Thompson, supra, officers learned through a confidential informant that the defendant was selling heroin. When officers approached the defendant on the street, he discarded something through the rear window of his car. While one officer detained the defendant, the other officer looked into the back of the vehicle and saw a piece of folded white tissue paper. He retrieved the folded tissue paper from inside the car and discovered it contained 14 tin foil packets of heroin. Id., at 334. The court upheld the warrantless seizure of the napkin from the car on grounds that the officers had reasonable suspicion based upon a tip from a confidential informant, that ripened into probable cause by the furtive act of tossing the napkin in the car. The court stated, however: “While the |nfurtive reaction alone was certainly insufficient to provide *1018 legal justification for the search, when the act is considered together with other facts known to the officers, the officers had a particularized basis for associating the object with narcotics trafficking,” Id,., at 336, citing Brown v. State, 269 Ga. 830, 504 S.E.2d 443, 446 (1998) (“Observation of what reasonably appear to be furtive gestures is a factor which may properly be taken into account in determining whether probable cause exists”).
In this instance, Officer Crum stopped the vehicle because the driver failed to use his turn signal. Obviously, this traffic offense does not create suspicion of contraband. Next, the driver got out of his car and subsequently fled, as did another passenger in the back seat of the vehicle. These evasive acts certainly could raise suspicion of possible illicit activity, but there are any number of reasons the driver and passenger may have wanted to avoid contact with the police. Afterwards, when Officer Crum spied into the vehicle with his flashlight, he saw the defendant passed out or asleep in the front passenger seat. He testified that the defendant appeared to be dazed when he was awakened and ignored their commands to show them his hands. He said the defendant appeared to be digging for something below the seat between his legs. Although he did not see the car keys in the ignition until he saw the defendant grab them, he did not see the defendant dispose of them. The defendant was pulled from the vehicle, patted down, handcuffed and placed under arrest.
Although this is a very close call, given these facts, we do not find that there was probable cause to believe that there was contraband or 112evidence of a crime in the car. Therefore, the first prong of Thompson is not met.
Even assuming that this suspicious behavior rose to the level of probable cause for Officer Crum to believe there was a fair probability that contraband was in the vehicle, there must also be exigent circumstances requiring an immediate warrant-less search. State v. Thompson, supra. The record provides no clear reason for impounding the vehicle for safety concerns or because it contained evidence of a crime. Officer Crum testified that he needed to recover the keys to the vehicle in order for it to be moved to a secure location. However, the vehicle was parked in a driveway off of the street, so it did not pose a hazard to traffic. We do not know the identity of the person’s driveway where the vehicle was parked — was it the defendant’s, a friend, or a stranger? There is no evidence that a wrecker was called before the search started or any evidence that inventory procedures were followed. Based on this evidence alone, we do not find that there were exigent circumstances requiring an immediate search of the vehicle without a warrant.
For the foregoing reasons, we conclude that the trial court erred when it denied the defendant’s motion to suppress. The instant search without a warrant did not meet the requirements under Arizona v. Gant, supra, as a search incident to an arrest, nor did it meet the requirements of the automobile exception under State v. Thompson, supra. Accordingly, the war-rantless search was in violation of Monroe’s Fourth Amendment right to be free from unreasonable searches and seizures.
|1sWe therefore reverse the judgment of the trial court denying the motion to suppress, and we vacate the conviction and sentence. We remand the case to the trial court for further proceedings.
REVERSED; CONVICTION AND SENTENCE VACATED; REMANDED FOR FURTHER PROCEEDINGS.

. Under State v. Crosby, 338 So.2d 584 (La.1976), a trial court has discretion to accept or reject a guilty plea conditioned upon reservation of appellate review of pre-plea assignments of non-jurisdictional error.

. The record preponderates that the officer intended to make the arrest for the crime of resisting an officer. La. R.S. 14:108.